# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Lisa Eloise Clark,**

    **Plaintiff,**

v.             **Case No. 06-2559-JWL**

**VF Jeanswear Limited Partnership**
**a/k/a Lee Apparel,**

    **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

  Plaintiff Lisa Eloise Clark, appearing pro se, filed suit against defendant, her former employer.  As stated in the pretrial order, plaintiff alleges that defendant violated plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, plaintiff asserts claims of discriminatory demotion and discriminatory discharge (both based on plaintiff's race, African-American), as well as a claim for retaliation.  This matter comes before the court on defendant's motion for summary judgment on plaintiff's claims.[1]  In its motion, defendant contends that the court lacks subject matter jurisdiction over plaintiff's

---

[1] Also pending before the court is plaintiff's third motion for appointment of counsel (doc. 33).  By way of background, plaintiff's second motion for appointment of counsel was denied by the magistrate judge at the final pretrial conference because the magistrate judge, after discussions with plaintiff, found plaintiff "articulate and quite capable of proceeding through the remainder of this case without the aid of counsel, especially given the relatively simple facts in this case."  *See* Order at 2 (Dec. 6, 2007).  After reviewing plaintiff's response to defendant's motion for summary judgment, the court agrees with the magistrate judge's assessment–plaintiff has shown herself to be entirely capable of presenting her claims (including specific  arguments in support of those claims) in an intelligent and coherent fashion and clearly has a firm grasp on the fundamental issues pertinent to her case.  The court, then, denies plaintiff's motion for appointment of counsel.

discriminatory discharge and retaliation claims based on plaintiff's failure to exhaust her administrative remedies and that plaintiff's discriminatory demotion claim fails because plaintiff cannot establish that she suffered an adverse employment action.

As explained below, to the extent defendant's motion sets forth the argument that plaintiff has failed to exhaust her administrative remedies with respect to her discriminatory discharge and retaliation claims, the court construes the motion as a motion to dismiss for lack of subject matter jurisdiction and grants that motion.[2]  As further explained below, the court grants defendant's motion for summary judgment on plaintiff's discriminatory demotion claim on the grounds as a matter of law the plaintiff did not suffer an adverse employment action.

*Facts*

The following facts are either uncontroverted (indeed, many are derived directly from the parties' stipulations contained in the pretrial order) or related in the light most favorable to plaintiff, the nonmoving party.  Defendant manufactures and sells branded apparel, including the Lee brand of apparel.  Defendant's Lee brand apparel business is based in Merriam, Kansas. Defendant hired plaintiff in April 2003 as a customer service representative in its customer

---

[2]Although defendant seeks summary judgment based on the court's lack of subject matter jurisdiction in light of plaintiff's failure to exhaust her administrative remedies, "the general rule is that it is improper for a district court to enter judgment under Rule 56 for defendant because of a lack of jurisdiction." *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005).  When a district court determines that it lacks subject matter jurisdiction over a case, the proper disposition of the case is the entry of an order dismissing the case rather than the entry of summary judgment. *Id.* at 1318.

relations department at its Merriam location.  Plaintiff's position was a part-time position consisting of 24 hours per week and plaintiff was not eligible for benefits.  As a customer service representative, plaintiff's primary responsibility was to answer telephone calls from customers and to assist customers with issues such as product questions and ordering and returning products.  In addition, plaintiff spent approximately one day each week processing returns, an assignment that involved handling returns sent directly to the company by customers and documenting the transaction such that the customer would receive credit or another product.

During the 2005 calendar year, plaintiff missed a significant number of her shifts and her absences exceeded her available vacation and personal days as well as her twelve weeks of medical leave.  By defendant's calculations, plaintiff worked a full shift on only 60 percent of her regularly scheduled workdays during 2005.  Thus, when plaintiff returned from a leave of absence on November 1, 2005, her supervisors and defendant's Human Resources Manager met with plaintiff to advise her that she had exhausted all available leave and to emphasize the importance of plaintiff's ability to be at work as scheduled.  According to defendant, plaintiff's reliable and consistent attendance was a significant part of her job because absences resulted in either a shortage of coverage on the telephone lines or another representative working additional hours to provide coverage.

On December 8, 2005, plaintiff was scheduled to work but did not report to work.  At that time, her supervisors decided to remove plaintiff from her position.  While defendant contends that it decided to place plaintiff on "inactive status" at that time (insisting that it did not terminate plaintiff's employment), the evidence viewed in the light most favorable to plaintiff

demonstrates that defendant terminated plaintiff's employment on that day. Early the following week, plaintiff's supervisors and various Human Resource personnel created a new position for plaintiff within the customer service department in which she would be able to process returns as her regular assignment and would no longer handle incoming telephone calls.

Toward that end, defendant's Human Resources Director, Fran Mellette, contacted plaintiff by telephone on December 14, 2005 to discuss the reassignment. During that converstaion, Ms. Mellette advised plaintiff that: (1) plaintiff had a job with defendant; (2) plaintiff would be moved off of the customer service telephone lines; (3) plaintiff would be placed in another customer service position in which she would process returns (a job to which plaintiff had been assigned weekly and which was not more onerous or difficult than the telephone duties); (4) plaintiff's rate of pay would remain the same; (5) plaintiff would continue to report to the same supervisors; (6) plaintiff could continue work the same number of hours a week (or fewer if she preferred); and (7) that, in order to better accommodate her needs to be away from work, plaintiff could choose the schedule she preferred to work.

Plaintiff told Ms. Mellette in this call that she needed time to consider the position. Plaintiff never accepted the position and never returned to work for defendant.

*Exhaustion of Administrative Remedies*

Defendant moves for summary judgment (which, as noted above, the court construed as a motion to dismiss) on plaintiff's discriminatory discharge and retaliation claims on the grounds that plaintiff's administrative charge is devoid of any allegations concerning these claims and,

4

accordingly, plaintiff has failed to exhaust her administrative remedies with respect to these claims.  Plaintiff does not dispute that her formal administrative charge does not allege retaliation (nor is the "retaliation" box checked) and does not contain allegations concerning her discharge.  Indeed, the entirety of the text of plaintiff's formal charge reads:

> I have been employed with the above named employer from April 2003 through the present.
>
> Throughout my employment, I have been subjected to different terms and conditions of employment than non-black employees in that I was held to a higher standard for attendance than whites, and I was demoted from my position of Customer Service.
>
> I believe I was treated less favorably because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff concedes in her response that her formal charge does not allege discriminatory discharge or retaliation.  She insists, however, that she has exhausted her administrative remedies because she presented allegations of discriminatory discharge and retaliation in connection with an intake questionnaire that she contends she provided to the agency and that she has submitted as an exhibit to her response.[3]

Quite recently, the Tenth Circuit held that a plaintiff's intake questionnaire was sufficient for purposes of administrative exhaustion because the questionnaire satisfied the EEOC's minimum requirements for a charge, the circumstances of the case indicated that the plaintiff

---

[3]For purposes of defendant's motion, the court assumes without deciding that Exhibit R to plaintiff's response is, in fact, the intake questionnaire that she provided to the agency, despite the fact that the document has not been authenticated by plaintiff as required by Federal Rule of Civil Procedure 56 and there is no indication that the document was ever submitted to or received by the agency.

intended to activate the administrative process, and the EEOC ultimately treated the questionnaire as a charge. *See Jones v. United Parcel Service, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). As explained by the Circuit, the EEOC's minimum requirements for a charge include "formal requirements" that the charge be "written, signed, and verified." *Id*. at 1184 (quoting 29 C.F.R. § 1601.9). A charge is verified, as required by the EEOC regulations, if it is "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Id.* at 1184 n.3 (qutoing 29 C.F.R. § 1601.3(a)).

Significantly, the intake questionnaire submitted by plaintiff with her response as Exhibit R is not verified in any manner–it is not sworn to or affirmed before any person nor is it signed under penalty of perjury; rather, the document is simply signed by plaintiff.[4] The document, then, does not meet the formal requirements for a charge and, under the Tenth Circuit's decision in *Jones*, cannot be considered sufficient to have fulfilled the exhaustion requirement. *See also Federal Exp. Corp. v. Holowecki*, ___ U.S. ___, 128 S. Ct. 1147 (2008) (in ADEA context, if intake questionnaire is to be deemed a charge, it must, among other things, meet the minimum

---

[4]The second page of plaintiff's Exhibit R contains plaintiff's signature and accompanying "certification" that the information on the form is true and correct to the best of her knowledge. Significantly, however, that page of Exhibit R is clearly not part of the agency's intake questionnaire and has been misplaced within Exhibit R. Rather, that page is entitled "Claimant's Separation Statement" and, on its face, is a form generated by the Kansas Department of Labor, Division of Employment Security, and utilized for the purpose of applying for unemployment benefits.

requirements for a charge set forth in the pertinent regulations). The court concludes, then, that plaintiff has not exhausted her administrative remedies with respect to her discriminatory discharge and her retaliation claims and those claims are dismissed for lack of subject matter jurisdiction. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (any claim involving a discrete employment action must have been the subject of a charge of discrimination at the administrative level).

*Discriminatory Demotion*

Defendant moves for summary judgment on plaintiff's discriminatory demotion claim on the grounds that the uncontroverted facts demonstrate that plaintiff did not suffer an adverse employment action. In analyzing whether plaintiff has suffered an adverse employment action, the court examines whether plaintiff has shown a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004). The Circuit does not consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Piercy v. Makata*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)).[5]

---

[5]The Supreme Court addressed the contours of adverse employment actions in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). In that case, the Court applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII. *Piercy v. Maketa*, 480 F.3d 1192, 1203 n.12 (10th Cir. 2007). The Supreme Court, however, made clear that the substantive discrimination provisions of Title VII are limited "to [adverse] actions that affect employment or alter the conditions of the workplace." *Id*. at

In the pretrial order, the parties have stipulated to the following facts:

> On December 14, 2005, plaintiff spoke with Human Resources Director, Fran Mellette. During that conversation, [Ms.] Mellette told plaintiff: (1) plaintiff had a job with defendant; (2) plaintiff would be moved off of the customer service telephone lines; (3) plaintiff would be placed in another customer service position in which she would process returns (a job to which plaintiff had been assigned weekly and which was not more onerous or difficult than the telephone duties); (4) plaintiff's rate of pay would remain the same; (5) plaintiff would continue to report to the same supervisors; (6) plaintiff could continue work the same number of hours a week (or fewer if she preferred); and (7) that, in order to better accommodate her needs to be away from work, plaintiff could choose the schedule she preferred to work. Plaintiff told [Ms.] Mellette in this call that she needed time to consider the position.

*See* Pretrial Order at ¶ 4(a)(4). It is further undisputed that defendant did not place any conditions on the offer and did not ask plaintiff to sign a release or relinquish any rights she might have. Finally, it is undisputed that the position did not involve a change in benefits (the position did not include benefits and plaintiff was not eligible to receive benefits in her previous customer service position).

Analyzing these undisputed facts through the lens of Tenth Circuit precedent, the court concludes that the reassignment proposed by defendant does not constitute an adverse employment action. In *Sanchez*, for example, the Circuit held that a female teacher denied transfer to a position with "the same salary and benefits . . . [and] substantially similar duties" did not suffer an adverse employment action because the position was "a purely lateral transfer." 164 F.3d at 532. Similarly, in *Wells v. Colorado Department of Transportation*, 325 F.3d 1205,

---

1203. Thus, while *Burlington Northern* modified the retaliation standards for adverse actions, it had no similar effect on the Tenth Circuit's discrimination jurisprudence. *Id*.

1213-14 (10th Cir. 2003), the Circuit held that the plaintiff's reassignment did not constitute an adverse employment action where "[h]er job classification and rate of pay remained the same, and her position was similar to those she had occupied in prior years."  While the proposed reassignment in this case involved a reallocation of plaintiff's responsibilities in that plaintiff would process returns all the time as opposed to one day per week and would no longer handle telephone calls, plaintiff admits that the processing of returns was not more onerous than her prior telephone duties and there is no evidence in the record that the exclusive processing of returns had any downside whatsoever.  Indeed, as plaintiff herself testified, the position described by Ms. Mellette was the "perfect situation, perfect schedule."

In light of the foregoing undisputed facts, no rational jury could find that the reassignment proposed by defendant constitutes an adverse employment action.  Summary judgment in favor of defendant is granted, then, on this claim.[6]

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's third motion for appointment of counsel (doc. 33) is denied and defendant's motion for summary judgment (doc. 34), which the court construes in part as a motion to dismiss for lack of subject matter

---

[6]Because the court concludes that plaintiff has not established an adverse action for purposes of her demotion claim (and because she has not exhausted her remaining claims), the court does not address plaintiff's arguments concerning pretext.  Stated another way, the court simply does not need to reach plaintiff's arguments concerning defendant's less favorable treatment of plaintiff as compared to Caucasian employees because her demotion claim does not meet the threshold requirement of an "adverse employment action" and her remaining claims were not presented at the administrative level as required by law.

jurisdiction, is granted.

**IT IS SO ORDERED.**

Dated this 3rd day of April, 2008, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge